# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| MARK VELASQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-CV-06008-W-DGK |
| | ) | |
| McELWAIN SPRAYERS, | ) | |
| SANDRA PENDLETON, and | ) | |
| SUSAN MATNEY | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS PENDLETON AND MATNEY SUMMARY JUDGMENT

This case arises from an incident in which a crop duster allegedly sprayed Plaintiff Mark Velasquez ("Velasquez") while he was installing a pipeline in a field owned by Defendants Sandra Pendleton ("Pendleton") and Susan Matney ("Matney") (collectively "the Owners"). Plaintiff alleges the Owners negligently allowed Defendant McElwain Sprayers to aerial spray the property when they knew or should have known that there were pipeline workers on the property.

Currently before the Court is the Owners' Motion For Summary Judgment (Doc. 89). The Owners allege Plaintiff lacks evidence on three of the essential elements of the negligence claim against them—duty, breach of duty, and causation—therefore they are entitled to summary judgment. For the reasons set forth below, the motion is GRANTED.

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, the court scrutinizes the evidence in the light most favorable to the nonmoving party, and the nonmoving party is given the benefit of all reasonable inferences without resorting to speculation. *Sindecuse v. Katsaros*, 541 F.3d 801, 803 (8th Cir. 2008); *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

**Facts**

Viewing the evidence in the light most favorable to the Plaintiff, for purposes of resolving the pending motion the Court finds the facts to be as follows. The Court has omitted controverted facts, facts immaterial to the resolution of the pending motion, and facts not properly supported by the record.[1]

---

[1] Plaintiff's proposed statements of fact numbered 30 and 31 are inadmissible hearsay. The statements are as follows:

> 30. In October 2008, an investigator for Plaintiff spoke with two farmers who indicated they farmed the property in question.
>
> 31. One of the farmers indicated that McElwain conducted aerial spraying of the property and area.

Plaintiff Mark Velasquez was sprayed with chemicals from an airplane while installing a pipeline in an agricultural field on July 16, 2007. Plaintiff claims the spraying occurred while working on a 40-acre parcel of land ("the Property") owned by Defendants Pendleton and Matney located on SW Contrary Road in Buchanan County, Missouri, near St. Joseph, Missouri. The land surrounding the Property is owned by Pendleton and Matney's parents.

Michael T. Pitts has farmed the Property since 2000, and he is responsible for hiring out the application of chemicals or fertilizer on the Property. Pitts shares the profits from farming the Property with Matney and Pendleton.

The crop on the Property is rotated each year from corn to soybeans. In 2007 the Property was planted with soybeans. Plaintiff testified in his deposition that the crop in the field surrounding him at the time of the incident was corn.

Since 2002, the only company hired to apply chemicals to the Property is Sur-Gro. It is controverted whether Sur-Gro's application of chemicals to the Property is always done from a truck on the ground. In the past Floyd McElwain ("McElwain"), a pilot who owns and operates an aerial application business in the St. Joseph area, Defendant McElwain Sprayers, has performed aerial spraying for Sur-Gro.[2]

Vince Roberts is a manager with Sur-Gro Plant Food. In his deposition he testified that when customers hire Sur-Gro to perform spraying applications it is done verbally and no contract

---

These statements are hearsay statements which are not admissible under any exception. These statements are not admissible under FRE 804(b)(3), because there has been no showing that the farmer who allegedly made the statement is unavailable to testify, a requirement under Rule 804(b)(3). Also there is no evidence that the statement "McElwain conducted aerial spraying of the property and area" was a statement against the farmer's pecuniary interest such that he would not have uttered it unless he believed it was true.

Although the statement might be admissible as a statement by a party-opponent under FRE 801(d)(2)(D), Plaintiff has not shown that the farmer is a party to this lawsuit, or that he was the Defendants' agent or servant.

[2] Whether McElwain Sprayers was in business from March 2007 to July 31, 2007, and whether it was performing aerial spraying during this time, is controverted. It is uncontroverted that from March 2007 to July 31, 2007, McElwain owned, operated, or performed services for an aerial spraying business he co-owned, Dave Edwards d/b/a E&M Sprayers ("E&M Sprayers").

is executed. Roberts testified Sur-Gro does not conduct any aerial application, nor do they bill out any aerial application. He directs customers who desire aerial spraying to Floyd McElwain, and McElwain bills the customers directly. McElwain has conducted aerial spraying for Sur-Gro's customers for close to 20 years. Roberts testified McElwain never billed Sur-Gro for aerial spraying conducted for Sur-Gro customers, and he has never seen an invoice from Floyd McElwain or David Edwards for aerial spraying.

This last testimony conflicts with the testimony of David Edwards, who testified that he and McElwain conducted aerial spraying for Sur-Gro, and that they billed Sur-Gro directly. Edwards stated Roberts was his contact, and that Roberts would just call them up and tell them who needed aerial spraying.

McElwain has been hired before by Matney's husband and Michael T. Pitts to perform aerial spraying, but not the Property or fields contiguous to the Property. McElwain has also been hired before by Pendleton and Matney's parents to conduct aerial spraying. But there is no evidence that from July 1, 2002 to July 1, 2008, the Owners, or anyone acting on their behalf, hired or contracted with anyone to aerially spray the Property.

McElwain testified in his deposition that the closest field to the Property he sprayed in July of 2007 was two and a half miles away from the Property.

Plaintiff claims the plane that sprayed him was yellow. McElwain owns a yellow and white Cessna which he uses for crop dusting. Other crop dusting planes were operating in the St. Joseph area at this time which were yellow.

Pitts knew the pipeline workers were going to be working on the Property before they were there, and he has seen them while farming the Property. The Owners became aware that a pipeline was going to be installed across the Property at least as early as June 2006 when they

executed the easement agreement. Matney was also told about the pipeline by her father. She was also given notice of the timeframe in which workers would be on the Property installing pipeline.

## Discussion

Count Three of the Complaint alleges the Owners "negligently allowed the work of chemical spraying" on the Property "when they knew, or should have known, that at the time of the spraying" Plaintiff and others were laying pipeline on the Property. Under Missouri law to establish a prima facie case of general negligence a plaintiff must show "(1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the defendant's failure to perform that duty; and (3) the plaintiff's injury was proximately caused by the defendant's failure." *Smith v. Dewitt and Assoc.*, 279 S.W.3d 220, 224 (Mo. Ct. App. 2009).

**A.     There is no evidence that the Owners breached any duty owed to Plaintiff.**

The Owners argue that under Missouri law they only owed Plaintiff a duty to protect him from acts or omissions that were foreseeable to cause harm or injury. *Cossey v. Air Systems Intern., Inc.*, 273 S.W.3d 588, 590 (Mo. Ct. App. 2009). They argue they cannot be liable because at no time relevant to this case did they hire, contract, or allow anyone to aerial spray the Property with chemicals. They also contend there is no history of aerially sprayed chemicals drifting from adjoining land onto Property such that it was foreseeable that Plaintiff would be sprayed while on the Property. Plaintiff counters that the Owners "had a duty to warn and/or prevent any dangerous conditions" because they "were aware and had notice that workers would be on their property," and cites *Small v. Ralston-Purina Co.*, 202 S.W.2d 533, 538 (Mo. Ct. App. 1947), for support.

5

The fact that the Owners knew the Plaintiff would be working on the Property did not give rise to a duty to protect against or warn about dangerous conditions that the Owners did not, and could not, have known about. Missouri has not adopted a regime of strict liability for landowners, and an owner does not have a duty to protect any entrant to land, even an invitee, from all dangerous conditions regardless of foreseeability or the owner's awareness of the danger. *Id.* at 539 (noting "[t]he owner is not an insurer of the safety of an invitee"). Indeed, far from supporting Plaintiff's position, the court in *Small* expressly rejected the suggestion that an owner should be presumed to know of a dangerous condition on his or her land. *Id.* at 538 (declining to create such a presumption even for dangerous conditions on an owner's private property). The Court stated that "some proof of knowledge, actual or constructive, is necessary in order to create liability." *Id.* at 539.

Whatever the precise standard of care the Owners owed to Plaintiff, they only had a duty to protect or warn him if there was some foreseeable harm. *See Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. 1995) (discussing the different duties owed to various entrants on land, and observing that the highest duty an owner owes any entrant to land is a duty to exercise reasonable care to protect against known dangers and those that would be revealed by inspection). In the present case there is no evidence, or facts from which the jury could reasonably infer, that the Owners or anyone acting on their behalf knew there would be spraying on the Property on July 16, 2007 and so had a duty to protect or warn the Plaintiff, consequently there was no breach.

Indeed, assuming the Plaintiff was on the Property when sprayed,[3] it appears he was sprayed by an errant crop duster, a third-party that was either negligent or committing a criminal act. But under Missouri law a landowner is not liable for the "misconduct or negligent acts of third persons unless the third persons are acting under direction or control of the owner" or the actions could have been "reasonably anticipated and guarded against." *Meadows v. Friedman R.R. Salvage Warehouse*, 655 S.W.2d 718, 720-21 (Mo. Ct. App. 1983). A landowner also has no duty to protect a plaintiff against the intentional criminal conduct of third persons unless the owner has a special relationship with the plaintiff or there are special circumstances present. *Id.* at 721. In the present case there is no evidence that the Owners should have reasonably anticipated that an errant crop duster would fly over the Property and spray the Plaintiff, nor is there evidence that the Owners had a special relationship with the Plaintiff or that special circumstances were present. Accordingly, the Court holds the Owners owed the Plaintiff no duty to protect or warn him from an errant crop duster, they cannot be liable for negligence, and entry of summary judgment is appropriate.

**B.     The Court need not take up the Owners' causation arguments.**

The Owners also contend that Plaintiff cannot prove exposure to a toxic substance at a level known to produce harm, thus he cannot prove causation. Plaintiff contends he has expert testimony that will establish this causation. Given that this issue is intimately connected with the resolution of a Daubert motion, and that the Court has already ruled that the Owners did not breach any duty owed to Plaintiff, the Court declines to rule on these arguments.

---

[3] The Owners contest this fact, noting that Plaintiff claims he was in a cornfield when the spraying occurred, but the Property was planted with soybeans at the time in accordance with a regular, set crop rotation. For purposes of resolving the pending summary judgment motion the Court assumes Plaintiff was on the Property when sprayed.

**Conclusion**

For the reasons discussed above, Defendants Pendleton and Matney's Motion For Summary Judgment (Doc. 89) is GRANTED.

**IT IS SO ORDERED.**

Date:   March 19, 2010                             /s/ Greg Kays
                                                   GREG KAYS, JUDGE
                                                   UNITED STATES DISTRICT COURT